**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-39

UNITED STATES TAX COURT

JOHN MAYER, JR., AND KERRY M. MAYER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19929-11S.                    Filed May 21, 2013.

<u>Michael Daniel Novy</u>, <u>Daniel P. Pavlik</u>, and <u>Richard A. Witkowski</u>, for
petitioners.

<u>Michael T. Shelton</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the petition

was filed.[1] Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioners' 2009 Federal income tax of $6,964 and an accuracy-related penalty of $1,393 pursuant to section 6662.

After concessions,[2] the only issue remaining for decision is whether petitioners are liable for the accuracy-related penalty under section 6662(a) and (b)(2). We hold that they are liable.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts, supplemental stipulation of facts, and accompanying exhibits.

---

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioners concede that they were required to report $6,726 of additional tax on their 2009 Federal income tax return (tax return) related to an early retirement plan distribution discussed infra. Petitioners also concede that they substantially understated their income tax on their tax return. Respondent concedes that petitioners were not required to report an Illinois State tax refund of $784 on their tax return.

Petitioners resided in the State of Illinois at the time the petition was filed.

At all relevant times, petitioners, John Mayer, Jr., and Kerry M. Mayer, were married. Mr. Mayer was employed by Microplastics, Inc., and was a participant in the Microplastics Retirement Plan (plan).

Bradford Plane and Patricia Ann Zeyen were cotrustees of the plan. Robert C. Landrum was the plan's investment broker of record. The plan was a qualified retirement plan as defined in section 4974(c) such that an early distribution from the plan would, absent some exception, be subject to a 10% additional tax provided for by section 72(t).

In early October 2009 petitioners experienced financial trouble and began considering a so-called hardship withdrawal from Mr. Mayer's plan account to help with petitioners' mortgage payments.

On October 6, 2009, Mr. Mayer sent an email to Mr. Plane requesting general "payback, taxation, and qualification" information regarding hardship withdrawals. Mr. Plane responded in an email that same day stating the following:

> For Payback:
> There is none. It is not a loan. That is why you are subject to the taxes and penalties below.
>
> For Taxes:
> All 401k hardship withdrawals are subject to taxes and the ten-percent penalty. * * *

On or around October 20, 2009, petitioners submitted an application for hardship withdrawal (hardship application) to Ms. Zeyen requesting a $67,257 distribution. The hardship application states that "the withdrawal may be subject to Federal income taxation * * * [and] a 10% penalty for 'premature distributions'".

On October 21, 2009, the plan administrator issued Mr. Mayer a check for $53,805.60 representing the net distribution amount remaining after the plan withheld 20% ($13,451.40) of the gross distribution for Federal income tax purposes. At that time Mr. Mayer was 46 years old.

Also on October 21, 2009, Ms. Zeyen sent an email to Mr. Mayer informing him that the check had been issued and that he would receive it within a few days.

On October 22, 2009, Mr. Mayer sent an email to Ms. Zeyen regarding the distribution check, asking "what the final amount would be with the 20 percent taken out? Also I will still have to take care of the final 10 percent myself? Correct. Thanks." Ms. Zeyen subsequently sent an email to Mr. Mayer stating: "I am told the check amount will be $53,805.60." However, Ms. Zeyen did not address Mr. Mayer's question regarding the "final 10 percent".

In January 2010 the plan administrator issued Mr. Mayer a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for tax year 2009 reporting the $67,257 gross distribution

and the $13,451.40 of Federal income tax withheld. There was a "1" in box 7, Distribution code(s), on the Form 1099-R indicating that the distribution was an "early distribution".

On or about February 2, 2010, Mrs. Mayer met with Dennis E. Weidmann, who had served as petitioners' tax preparer for approximately 15 years. At the meeting Mr. Weidmann reviewed the Form 1099-R and informed Mrs. Mayer that, on the basis of the distribution code number "1" appearing in box 7, the hardship withdrawal was a premature distribution subject to the 10% additional tax. Mrs. Mayer informed Mr. Weidmann that she believed the hardship withdrawal was not subject to the 10% additional tax. After a discussion regarding the possibility that the Form 1099-R was incorrect, Mrs. Mayer informed Mr. Weidmann that petitioners would obtain a revised Form 1099-R.

On February 4, 2010, after Mr. Mayer had inquired as to the accuracy of the Form 1099-R, he received an email from Ms. Zeyen informing him that the Form 1099-R was correct. Mr. Mayer read the email and conveyed the information therein to Mrs. Mayer.

On February 5, 2010, Mr. Weidmann prepared petitioners' tax return and printed out a copy for petitioners' review. The return reported the $67,257

distribution from Mr. Mayer's plan account but did not report the 10% additional tax pursuant to section 72(t).

Also on February 5, 2010, Mr. Weidmann informed petitioners that he would file their tax return after he received from them a signed Form 8879, IRS e-file Signature Authorization, granting him the authority to electronically file the tax return on their behalf.

Sometime thereafter, Mrs. Mayer returned to Mr. Weidmann's office to retrieve the paperwork from his secretary. However, Mrs. Mayer did not see Mr. Weidmann during this second visit, and petitioners did not inform Mr. Weidman of the February 4, 2010 email that Mr. Mayer had received regarding the Form 1099-R.

Still under the belief that petitioners would obtain a revised Form 1099-R, and with a signed Form 8879 granting him the authority to do so, Mr. Weidmann subsequently efiled petitioners' tax return reporting the $67,257 distribution but not the 10% additional tax.

## Discussion

Section 6662(a) and (b)(2) imposes a penalty equal to 20% of the amount of any underpayment that is due to a substantial understatement of income tax. An individual substantially understates his or her income tax when the reported tax is

understated by the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

The record demonstrates, and petitioners concede, that a substantial understatement of income tax exists. See supra note 2. Accordingly, respondent has met his burden of production. However, petitioners contend that the accuracy-related penalty should not be imposed because they allegedly received professional advice that Mr. Mayer's hardship withdrawal was not subject to the 10% additional tax.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty with respect to any portion of an underpayment if the taxpayer establishes that there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion. The decision as to whether the taxpayer

acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances, including the taxpayer's reliance on professional advice. See Neely v. Commissioner, 85 T.C. 934 (1985); sec. 1.6664-4(b)(1), Income Tax Regs. The taxpayer bears the burden of proving reasonable cause and good faith. See secs. 6664(c)(1), 7491(c); Higbee v. Commissioner, 116 T.C. at 446.

With respect to a taxpayer's reliance on professional advice, the taxpayer must establish that (1) the advisor was a competent professional with sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); see also Goyak v. Commissioner, T.C. Memo. 2012-13, slip op. at 39 ("[T]o rely reasonably upon advice so as possibly to negate a section 6662 accuracy-related penalty * * * the taxpayer must prove * * * that the taxpayer meets each requirement of the * * * three-prong test.").

Naturally, petitioners must have actually received professional advice that the hardship withdrawal was not subject to the 10% additional tax in order to claim that they reasonably relied in good faith on such advice. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99 (the taxpayer must have actually relied in good

faith on the adviser's judgment). At trial Mr. Mayer testified that he met with Ms. Zeyen and Mr. Landrum, the investment broker of record for the plan, on October 20, 2009. According to Mr. Mayer, during that meeting Mr. Landrum informed him that he could avoid the 10% additional tax on the hardship withdrawal if he submitted paperwork from his mortgage provider indicating that foreclosure on petitioners' home could result from his current financial situation. Mr. Mayer testified that he subsequently obtained and submitted such mortgage paperwork to Ms. Zeyen.

However, both Ms. Zeyen and Mr. Landrum testified that the alleged October 20, 2009 meeting never took place. In fact, Mr. Landrum testified that he had never met Mr. Mayer before trial. Furthermore, Ms. Zeyen testified that Mr. Landrum "has nothing to do with employees' hardship withdrawals or 401k loans or any of the administrative aspects of a 401k plan with employees." In addition, Ms. Zeyen and Mr. Landrum testified that they do not give tax advice. Moreover, the record does not contain the mortgage paperwork Mr. Mayer claimed he submitted, and Ms. Zeyen testified that she never received such paperwork from Mr. Mayer. Given the conflicting testimony in this case, and absent reliable documentary evidence to support Mr. Mayer's recollection of events, we are unable to conclude that Mr.

Mayer ever received tax advice from Mr. Landrum that the hardship withdrawal was not subject to the 10% additional tax.

Even assuming, arguendo, that Mr. Landrum had advised Mr. Mayer that the hardship withdrawal was not subject to the 10% additional tax, the record demonstrates that reliance on such alleged advice would not have been reasonable. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99. Mr. Landrum is an investment broker and testified that he does not give tax advice. Petitioners have not established that Mr. Landrum was a competent professional with sufficient expertise to justify their reliance on any of his alleged advice concerning the 10% additional tax. See id.

Moreover, the record clearly shows that on more than one occasion petitioners were informed that the hardship withdrawal was likely subject to the 10% additional tax. For instance, when petitioners were gathering information on the hardship withdrawal, Mr. Plane informed Mr. Mayer that "[a]ll 401k hardship withdrawals are subject to taxes and the ten-percent penalty." Furthermore, the hardship application itself states that the hardship withdrawal may be subject to a 10% penalty. Moreover, Mr. Weidmann, petitioners' tax preparer of approximately 15 years, advised Mrs. Mayer that the hardship withdrawal was, as far as he was aware, subject to the 10% additional tax. Mr. Weidmann prepared petitioners' tax

return without reporting the 10% additional tax only after Mrs. Mayer informed him that she and Mr. Mayer would obtain a revised Form 1099-R. See Pessin v. Commissioner, 59 T.C. 473, 489 (1972) ("[T]he ultimate responsibility for a correct return lies with the taxpayer who must furnish the necessary information to his agent who prepared his return.").

On the basis of the record, we conclude that petitioners have not met their burden of proving reasonable cause and good faith. See secs. 6664(c)(1), 7491(c); Higbee v. Commissioner, 116 T.C. at 446. Therefore, we sustain respondent's determination with respect to the accuracy-related penalty.

## Conclusion

We have considered all of the arguments advanced by petitioners, and, to the extent not expressly addressed, we conclude that those arguments do not support a result contrary to our decision herein.

To give effect to our disposition of the disputed issue, as well as the parties' concessions, see supra note 2,

Decision will be entered

under Rule 155.